Filed 6/5/13  In re D.A. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.A. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.A.,<br><br>    Defendant and Appellant. | G047725<br><br>(Super. Ct. Nos. DP019048, DP019397 & DP021177)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah Servino, Judge.  Dismissed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

S.A. (Mother) appeals from the order made at the Welfare and Institutions Code section 366.26 hearing (hereafter the .26 hearing)[1] terminating her parental rights to her three children: D.A., X.I., and G.I.[2] X.I. and G.I. were placed with a paternal aunt who wanted to adopt them. Mother contends the juvenile court abused its discretion by denying a motion to continue the .26 hearing, originally made by the Orange County Social Services Agency (SSA), when it learned the agency conducting the paternal aunt's adoption home study had declined to proceed with it. SSA requested additional time to further assess whether the paternal aunt's home study could be approved. Mother also contends the lack of an approved home study established the paternal aunt was unable to adopt the children, but because the paternal aunt could provide them with a stable and permanent home and removal of the children from her care would be detrimental, the juvenile court erred by not applying the relative caregiver exception to termination of parental rights. (§ 366.26, subd. (c)(A).)

SSA has filed a motion to dismiss the appeal as moot accompanied by a motion to take additional evidence and augment the record on appeal with a postjudgment status review report and the juvenile court's minute order approving SSA's recommendations contained in the report. SSA reported the paternal aunt's adoption home study has been completed and approved, and her adoption of the children is ready to be finalized. Mother opposes SSA's motions. We conclude augmentation of the record on appeal is appropriate, and in view of the subsequent events, Mother's appeal is moot. Accordingly, we dismiss the appeal.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] The children's fathers do not appeal, and Mother raises no issues pertaining to termination of her parental rights to D.A.

This dependency proceeding began in 2009, when then four and one-half year old D.A. (half-sibling of X.I. and G.I.) was taken into protective custody due to allegations of severe physical abuse by Mother and her husband, M.I. (Father). In December 2009, Mother pled no contest to an amended petition under section 300, subdivisions (a) [serious physical harm] and (b) [failure to protect], and D.A. was declared a dependent child. He was removed from Mother's custody and placed in a foster home. Reunification services were ordered for Mother. [3]

X.I. was born on January 27, 2010, and due to the allegations of serious physical abuse of D.A., a petition was filed under section 300, subdivisions (b) [failure to protect], and (j) [abuse of a sibling]. She was detained and placed in the paternal aunt's home in February, but in March, the paternal aunt asked that X.I. be removed from her home (largely due to conflicts with Father but also because of financial problems relating to providing child care), and X.I. was moved to a foster home. In April 2010, Mother and Father pled no contest to X.I.'s petition. On May 3, 2010, X.I. was declared a dependent child. She was removed from the parents' custody and reunification services were ordered.

By June 2010, Mother had made some progress in her reunification services with D.A., but he did not want to return to her care. Reunification services continued for D.A. Mother and Father continued to participate in services, and by September 2010, were having unmonitored visits with X.I. Reunification services were continued for X.I.

G.I. was born on May 2, 2011. She was not detained, but a dependency petition was filed based on the previously sustained allegations in D.A.'s and X.I.'s

---

[3]     D.A.'s father's whereabouts were unknown for most of the dependency, other than that he had moved to Guam. Shortly before the .26 hearing, D.A.'s father contacted SSA indicating he wanted custody of his son. He was eventually granted presumed father status, but his section 388 petition to modify the referral order was denied. His parental rights to D.A., as well as Mother's, were terminated.

petitions.  On June 9, 2011, the parents pled no contest to G.I.'s petition.  The juvenile court declared G.I. a dependent child and ordered family maintenance services.

On June 1, 2011, X.I. was placed with her parents for a 60-day trial visit, and on July 27, 2011, the juvenile court ordered her returned to the parents under a plan of family maintenance.  By early December 2011, D.A. was having overnight visits with Mother and SSA was moving towards placing him on a 60-day visit, and SSA was recommending G.I.'s case be closed.   The situation then abruptly changed.

On December 2, 2011, SSA filed a section 387 supplemental petition alleging physical abuse of X.I. (now almost two years old) while in her parents' care.  The family had moved to Los Angeles County, and in response to a child abuse report, the Los Angeles County Children's Services social worker found X.I. covered with bruises, scabs, and scratches in multiple stages of healing all over her body.  Mother could not satisfactorily explain the extensive injuries.  Six-month-old G.I. had ringworm on her legs, eczema on her face, and a bruise on her lower back.  On December 5, 2011, the juvenile court detained both girls and gave the parents monitored visitation.  D.A.'s 60-day trial visit was cancelled.

The girls were placed in the paternal aunt's home following a positive December 11, 2011, home evaluation.  They have remained there throughout the remainder of these dependency proceedings and have thrived in her care.  The paternal aunt reported Father had told her even if he and Mother got the girls back, they would return them to the paternal aunt because they were not safe in the parents' home.  SSA recommended that neither parent receive further reunification services for the girls.

Following a contested jurisdictional hearing, on March 5, 2012, the court found the allegations of the section 387 petition true and set a contested dispositional hearing.  On that same date, the court terminated reunification services as to D.A. and set a .26 hearing.  Following a contested dispositional hearing in late March 2012, the

4

juvenile court ordered X.I. and G.I. removed from the parents' custody, declined further reunification services, and set a .26 hearing.

In the reports for the children's .26 hearings, SSA recommended parental rights be terminated and the children freed for adoption. X.I. and G.I. continued to thrive in the paternal aunt's home, and SSA opined both girls were adoptable. The paternal aunt was committed to adopting X.I. and G.I. They referred to her as "'mama,'" sought her out to meet their needs, and responded to her directives. During visits with the parents, which were monitored by the paternal aunt, the children turned to the paternal aunt for comfort and attention, not the parents. Both children had "made great strides in the current prospective adoptive placement, which can be attributed to the consistent limit-setting, structure and unconditional love and understanding."

In its July 19, 2012, report for the .26 hearing, SSA explained the paternal aunt had been referred to the Children's Bureau in April 2012 for an adoption home study. The preliminary assessment was good. The paternal aunt had acknowledged however that she had seen a therapist for a number of years "to address symptoms of depression caused by resentment toward her father," she was treated for depression by a psychiatrist in 2003 or 2004, and her primary care physician had prescribed medication to alleviate the symptoms of depression. The Children's Bureau wanted some additional time for its assessment. The .26 hearing was continued to September 19, and then to October 25.

In its October 25, 2012, report for the .26 hearing, SSA requested a 60-day continuance. While the paternal aunt's level of cooperation in the home study had been excellent, information received from her psychiatrist on October 19, 2012, "regarding the extent and recentness of her mental health history" had caused the Children's Bureau to decline to complete the adoption home study, and it sent the referral back to SSA. SSA requested the continuance to "further assess whether or not the [paternal aunt's] Adoptive Homestudy can be approved." Minors' counsel opposed the request. On the same day,

Mother sought a short continuance of the permanency hearing because one of her witnesses was unavailable. The court denied SSA's request but granted Mother's request and continued the hearing to November 1, 2012.

At the continued .26 hearing, Mother orally "renew[ed]" SSA's motion to continue the .26 hearing as to X.I. and G.I. so the paternal aunt's home study could be completed. Minors' counsel objected and SSA did not renew its continuance. The court denied Mother's motion for a continuance.

At the conclusion of the contested .26 hearing, SSA and minors' counsel both argued the girls were adoptable, and that there was not clear and convincing evidence the paternal aunt would not be able to adopt or that it would be detrimental for the girls to be removed from her care if she were unable to do so. Mother's counsel argued the relative caretaker exception to termination of parental rights should be applied because the paternal aunt was a relative who was unable to adopt, but it was a stable placement, and it would be detrimental to remove the girls from the paternal aunt's home.

The juvenile court found the children were adoptable and none of the exceptions to termination of parental rights applied. The juvenile court terminated parental rights as to all three children. Mother appeals.

DISCUSSION

Mother contends the juvenile court abused its discretion by not granting a continuance of the .26 hearing "for the length of time necessary to see if [the paternal aunt] could be approved to adopt[.]" She argues there was "a very real possibility that [the paternal aunt] will be unable to adopt" the girls because of the lack of an approved adoption home study. Moreover, Mother argues, if the paternal aunt cannot adopt then the relative caretaker exception to termination of parental rights contained in section 366.26, subdivision (c)(1)(A),[4] should apply. In the alternative, Mother contends the

_____

[4] Section 366.26, subdivision (c)(1)(A), requires the juvenile court to terminate parental rights if a child is likely to be adopted unless "[t]he child is living with

6

juvenile court erred by not applying the relative caretaker exception because the uncontroverted evidence was the paternal aunt was unable to adopt the girls but was willing to provide them a stable and permanent home, and their removal from her custody would be detrimental to their emotional well being.

After this appeal was submitted, SSA moved to vacate submission so it could file a motion to take additional evidence and augment the record on appeal (Code Civ. Proc., § 909; Cal. Rules of Court, rules 8.155 & 8.252(c)), and a motion to dismiss the appeal as moot. We vacated submission, allowed SSA to file the motions, and allowed Mother to file opposition.

SSA's motions ask us to augment the record with: (1) the SSA status review report dated May 1, 2013, prepared for the permanency review hearing; and (2) the juvenile court's minute order from the May 1, 2013, periodic permanency review hearing. In the status review report, SSA reports the paternal aunt's adoption home study has been completed and approved, X.I. and G.I. continue to be placed in the paternal aunt's home, the paternal aunt remains committed to adopting the girls, and she has been granted de facto parent standing. SSA reported the paternal aunt's adoption signing will be completed within the next 30 days and once signing is completed, "the only thing that will be holding up the [girls' adoption by the paternal aunt] will be[] the resolution of [this] current appeal." The minute order states SSA's status report was submitted and filed with the court, the court read and accepted the report into evidence, and the court adopted the recommendations of SSA in accordance with the report. SSA contends these recent events render Mother's appeal moot as there is no effective relief we can grant her.

---

a relative who is unable or unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment through legal guardianship, and the removal of the child from the custody of his or her relative would be detrimental to the emotional well-being of the child."

"'[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' [Citation.] The question of mootness in a dependency case should be decided on a case-by-case basis . . . ." (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.)

We grant SSA's motion to take additional evidence and augment the record because they demonstrate the appeal is moot and must be dismissed. Although appellate courts rarely accept postjudgment evidence or evidence that is developed after the challenged ruling is made (see *In re Zeth S.* (2003) 31 Cal.4th 396, 405, 413-414), our augmentation of the record in this case does not contravene the *Zeth S.* rule. First, the postjudgment evidence consists of records of the juvenile court, not an unsworn statement of counsel. (*Id.* at p. 407.) Second, the evidence is not offered to obtain a reversal (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676 (*Josiah Z.*)), and taking the evidence will not overturn a judgment terminating parental rights, nor will it impair "the juvenile law's purpose of 'expediting the proceedings and promoting the finality of the juvenile court's orders and judgment.' [Citation.]" (*In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1421 (*Salvador M.*).) And third, the SSA report and minute order relate solely to the question whether the appeal should be dismissed as moot, not to the merits of the appeal or the correctness of the judgment. (*Josiah Z.*, *supra*, 36 Cal.4th at p. 676.)

*Salvador M., supra,* 133 Cal.App.4th 1415, is instructive. In *Salvador M.*, the mother challenged the adoptability finding for siblings who were placed with the maternal grandparents, arguing that because there was not yet an approved home study, the grandparents might not be allowed to adopt the children. (*Id*. at p. 1419.) If the grandparents were not approved, then there could be an interference with the sibling bonds that would warrant applying the sibling bond exception to termination of parental rights. (*Ibid.* See former § 366.26, subd. (c)(1)(E), now § 366.26, subd. (c)(1)(B)(v).)

8

The appellate court granted the social services agency's motion to augment the record with a postjudgment addendum report indicating the grandmother's adoption home study was completed and approved because the evidence "removed any uncertainty" about the grandparents' ability to adopt and rendered the mother's appellate claim moot. (*Salvador M., supra,* 133 Cal.App.4th at p. 1422.)

Similarly in *In re B.D.* (2008) 159 Cal.App.4th 1218 (*B.D.*), counsel for B.D., one of a set of five siblings, had asked the court to continue the section 366.26 hearing for 180 days pursuant to section 366.26, subdivision (c)(3), which allows the court to continue the .26 hearing if the child is adoptable but difficult to place and there is no identified or prospective adoptive parent. The juvenile court denied the continuance, found the siblings were likely to be adopted, and terminated parental rights. (*B.D., supra,* 159 Cal.App.4th at pp. 1226-1227.) On B.D.'s appeal, the appellate court augmented the record to include postjudgment social services agency addendum reports and juvenile court minute orders showing an adoptive home had been found that would take all the siblings, the juvenile court had approved their placement in the home, and if that home fell through, there were 10 other homes identified. (*Id.* at p. 1240, fn. 8.) "[T]he postjudgment evidence shows the issue of adoptability has been rendered moot by the children's subsequent placement in an approved adoptive home, and any procedural error was harmless. . . . In view of the children's placement together in an approved adoptive home, we see no reason to further delay the proceedings. [Citation.]" (*Id.* at pp. 1240-1241, fn. omitted.)

Mother opposes SSA's motion to take additional evidence and augment the record, and she opposes SSA's motion to dismiss the appeal.[5] She attempts to distinguish

---

[5] Mother also objected to our vacating submission to allow SSA to file the motions because "[w]ith any diligence, [County Counsel] could have submitted this 'evidence' prior to submission [of the appeal]." Because neither party requested oral argument on this appeal, oral argument was deemed waived, and the appeal was submitted on April 18, 2013. Mother argued that if SSA had not waived oral argument,

*Salvador M., supra,* 133 Cal.App.4th 1415, by pointing out it concerned the sibling benefit exception, not the relative caretaker exception. That is a distinction without meaning. Mother also suggests *Salvador* supports her position on appeal (i.e., that a continuance should have been granted), because the *Salvador* court admonished the juvenile court it would have been "the better procedure" for it to have continued the .26 hearing until the grandmother's adoptive home study could be completed. (*Id.* at p. 1422.) But that observation had nothing to do with whether the appellate record could be augmented or with whether the subsequent approval of the grandmother's home study rendered the appeal moot.

Mother also asserts the new evidence does not necessarily render her appeal moot. Mother concedes the approval of the paternal aunt's home study renders the issue regarding applicability of the relative caretaker exception moot. But she argues it does not render moot her contention the court abused its discretion by denying a continuance so the home study could be completed. She argues that if we dismiss the appeal, we are impliedly affirming the juvenile court's "erroneous judgment" and there is an issue of public interest as to whether the juvenile court must grant a continuance to assess a relative caretaker's ability to adopt before finding the relative caretaker exception does not apply.

We reject Mother's contentions. Even were we to agree the juvenile court should have granted the motion for a continuance to permit the paternal aunt's home study to be completed, there simply is no practical relief that can now be granted. We cannot fathom what could possibly be gained by entertaining Mother's appeal (other than vindication of Mother's argument) in view of the subsequent approval of the paternal

---

the matter would not have been already under submission when SSA's report was filed and the juvenile court ruled on May 1, 2013, and SSA would not have needed to ask for submission to be vacated. Inasmuch as we did vacate submission and did permit SSA to file the motions, we need not address Mother's absurd objection.

aunt's home study and pending finalization of the children's adoption by her.  We see no reason to further delay those proceedings.

DISPOSITION

Respondent's motions to take additional evidence and augment the record on appeal and to dismiss the appeal are granted.  The appeal is dismissed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


BEDSWORTH, J.

11